ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NANCY CAROLINA DEVESA MÉNDEZ<br><br>Apelada<br><br>v.<br><br>EDUARDO RUBIO CARTAYA<br><br>Apelante | TA2025AP00558<br><br><br><br><br>consolidado con | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV07736<br><br>Sobre: Desahucio |
| EDUARDO RUBIO CARTAYA<br><br>Apelante<br><br>v.<br><br>NANCY DOLORES MÉNDEZ GONZÁLEZ; NANCY CAROLINA DEVESA MÉNDEZ<br><br>Apeladas | TA2025AP00559 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV05016<br><br>Sobre: Compraventa |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de enero de 2026.

Comparece Eduardo Rubio Cartaya ("señor Rubio Cartaya") mediante los recursos TA2025AP00558 y TA2025AP00559, respectivamente, y nos solicita la revisión de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan ("TPI") el 17 de octubre de 2025. Mediante el referido dictamen, el TPI ordenó la desestimación de la *Demanda* sobre compraventa en contra de Nancy Dolores Méndez González ("señora Méndez González") y Nancy Carolina Devesa Méndez ("señora Devesa González") (en conjunto, "Apeladas"), y la *Reconvención* presentadas en el Caso Núm. SJ2023CV05016. De igual manera, el foro primario declaró *Con Lugar* la *Demanda* sobre desahucio en contra del señor Rubio Cartaya en el Caso Núm. SJ2023CV007736. El 18 de noviembre de 2025 este Tribunal ordenó la consolidación de ambos recursos de apelación, toda vez que estos conciernen a las mismas partes e impugnan el mismo dictamen.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia* apelada.

**I.**

El caso de marras tiene su origen procesal en una *Demanda* presentada el 25 de mayo de 2023 por el señor Rubio Cartaya sobre incumplimiento contractual en contra de la señora Méndez González y la señora Devesa Méndez.[1] Al referido pleito se le identificó como Caso Núm. SJ2023CV05016. El señor Rubio Cartaya alegó que el 16 de febrero de 2019 suscribió con la señora Méndez González un *Contrato de Arrendamiento*, mediante el cual, ésta le alquiló el Apartamento C del Condominio Calle Italia 2027, en San Juan, Puerto Rico. Sostuvo que dicho apartamento estuvo inscrito en el Registro de la Propiedad a nombre de la señora Méndez González hasta el 21 de diciembre de 2021. En este sentido, adujo que el 9 de noviembre de 2012 la señora Méndez González donó el Apartamento C a su hija, la señora Devesa Méndez, y que dicha escritura de donación fue presentada para su inscripción en el Registro de la Propiedad el 20 de julio de 2021. Alegó que pese a ello la señora Méndez González siempre le manifestó que ella era la verdadera dueña del Apartamento C, razón por la cual ésta presuntamente se lo vendió el 4 de septiembre de 2022.

De igual manera, afirmó que la señora Méndez González es titular del Apartamento E del Condominio Calle Italia 2027. Planteó que, durante el año 2020, la señora Méndez González le indicó que tenía intención de vender los Apartamentos C y E. Arguyó que en ese momento la señora Méndez González le ofreció la venta de ambos apartamentos por el precio alzado de $1,400,000.00. Sostuvo que aceptó la oferta y que la ejecución del contrato y la escritura de compraventa se dejó pendiente hasta la fecha en que ésta se mudara de Puerto Rico. Alegó que el 4 de noviembre de 2022 se reunió con la señora Méndez González para hablar sobre la compraventa de los apartamentos. Adujo que la señora Méndez González le indicó un cambio en el precio por la venta de los Apartamentos C y E, pues le requirió $2,000,000.00. Alegó que ese mismo día

---

[1] *Véase*, Apéndice del Recurso TA2025AP00559, Entrada Núm. 1.

luego de considerar la oferta, le comunicó a la señora Méndez González que aceptaba comprar los referidos apartamentos por la cantidad de $2,000,000.00. Sostuvo que éstos se dieron la mano para confirmar el acuerdo de compraventa.

A su vez, argumentó que como parte del acuerdo de compraventa la señora Méndez González se obligó a realizar los trámites legales pertinentes para dejar sin efecto la donación a su hija, la señora Devesa Méndez, e inscribir nuevamente el Apartamento C a su nombre. Manifestó que el 27 de noviembre de 2022, la señora Méndez González le entregó la posesión del Apartamento E. Alegó que el 17 de marzo de 2023 la señora Méndez González le indicó que su hija deseaba tasar la propiedad, por lo que acordaron una fecha para ello. Expuso que el 31 de marzo de 2023, la señora Méndez González le informó que le habían notificado las tasaciones de los Apartamentos C y E.

Adujo que el 12 de abril de 2023, la señora Méndez González le remitió un mensaje a la pareja consensual de éste, negando la existencia del acuerdo de compraventa. Explicó que el 4 de mayo de 2023 la señora Méndez González le escribió un mensaje de texto requiriéndole todos los documentos y llaves de acceso que le había entregado, como también expresó su deseo de que éste y su pareja se mudaran del Apartamento C. Entre otros remedios, el señor Rubio Cartaya solicitó al TPI que ordenara a las señoras Méndez González y Devesa Méndez a otorgar las escrituras correspondientes para que la titularidad y dominio de los Apartamentos C y E se inscriban a su nombre en el Registro de la Propiedad.

El 14 de agosto de 2023 las señoras Méndez González y Devesa Méndez presentaron su *Contestación a Demanda y Reconvención.*[2] En resumen, manifestaron que la señora Méndez González administra la propiedad de su hija, la señora Devesa Méndez. Asimismo, adujeron que había intención de negociar una posible compraventa de los Apartamentos C y E, pero que nunca llegaron a un acuerdo en cuanto al precio. Por otro lado, alegaron que el contrato de arrendamiento del Apartamento C efectuado en febrero de 2019 tenía la duración

---

[2] *Id.*, Entrada Núm. 22.

de un (1) año. Sostuvieron que el señor Rubio Cartaya se apoderó de los inmuebles por la fuerza. En esa línea, explicaron que el señor Rubio Cartaya cerró con cadena y candado los portones para evitar el acceso a la propiedad de su dueña, la señora Méndez González. Asimismo, manifestaron que la señora Devesa Méndez le requirió al señor Rubio Cartaya el desalojo de la propiedad por medio de la señora Méndez González. Por tales razones, le solicitaron al TPI que ordenara el desalojo del Apartamento C y la devolución del control del Apartamento E. De igual modo, pidieron compensación por daños emergentes y por daños y perjuicios, así como el pago de los honorarios de abogados.

En cuanto al Caso Núm. SJ2023CV07736, el 11 de agosto de 2023 la señora Devesa Méndez presentó una *Demanda* sobre desahucio en contra del señor Rubio Cartaya. Entre otros asuntos, alegó que es propietaria del Apartamento C del Condominio Calle Italia 2027, en San Juan, Puerto Rico, y que su escritura consta inscrita en el Registro de la Propiedad. Afirmó que el 12 de mayo de 2023 le requirió al señor Rubio Cartaya por medio de la señora Méndez González que en el término de un (1) mes contado desde dicha fecha, debía desalojar la propiedad. Manifestó que el señor Rubio Cartaya se obstinó en ocupar el inmueble en cuestión, poniendo candados en los portones de acceso y negando la entrada a corredores de bienes raíces, prospectos arrendatarios, personal de mantenimiento y a la administradora de éste. Por ello, solicitó que el TPI declarara *Ha Lugar* la *Demanda* y, por consiguiente, ordenara el lanzamiento del señor Rubio Cartaya.

Así las cosas, el 17 de agosto de 2023 las señoras Méndez González y Devesa Méndez presentaron una *Moción Solicitando Sentencia Sumaria y Desestimación* en el Caso Núm. SJ2023CV05016.[3] En reacción, el 23 de agosto de 2023 el señor Rubio Cartaya solicitó la consolidación del pleito con el Caso Núm. SJ2023CV07736.[4] Mientras que el 25 de agosto de 2023 las señoras Méndez González y Devesa Méndez presentaron una *Moción en Cumplimiento de*

---

[3] *Id.*, Entrada Núm. 28.
[4] *Id.*, Entrada Núm. 36.

*Orden y en Oposición a Moción de Consolidación.*[5] En igual fecha, el TPI ordenó que el caso SJ2023CV07736 continúe consolidado bajo el trámite ordinario con el caso SJ2023CV05016.[6]

Luego, el 18 de septiembre de 2023 el señor Rubio Cartaya presentó una *Oposición a Moción de Sentencia Sumaria Parcial y Moción para que se dicte Sentencia Sumaria a favor de la parte Demandante.*[7]

Posteriormente, el 3 de junio de 2024, notificada al día siguiente, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción Solicitando Sentencia Sumaria y Desestimación* y la *Oposición a Moción de Sentencia Sumaria Parcial y Moción para que se dicte Sentencia Sumaria a favor de la parte Demandante.*[8] En respuesta, las señoras Méndez González y Devesa Méndez comparecieron a este foro revisor mediante *Certiorari* clasificado alfanuméricamente como KLCE202400748.[9] A tales efectos, el 21 de agosto de 2024, notificada el 23 del mismo mes y año, emitimos una *Sentencia* en la que eliminamos el cuarto hecho determinado por el foro recurrido, y así modificada, confirmamos la *Resolución* del TPI.[10]

Tras varias instancias procesales y celebrado el juicio en su fondo, el TPI, Sala Superior de San Juan dictó *Sentencia* el 17 de octubre de 2025.[11] En virtud del referido dictamen, el TPI desestimó la *Demanda* y la *Reconvención* respectivamente presentadas en el Caso Núm. SJ2023CV05016 sobre compraventa, y declaró *No Ha Lugar* la moción al amparo de la Regla 39.2 (c) de Procedimiento Civil presentada en juicio por las Apeladas. A su vez, declaró *Con Lugar* la *Demanda* en el Caso Núm. SJ2023CV07736 sobre desahucio. En igual fecha, el Caso Núm. SJ2023CV07736 fue desconsolidado.[12]

Inconforme, el 20 de octubre de 2025 el señor Rubio Cartaya presentó una *Moción de Reconsideración* en el Caso Núm. SJ2023CV07736 la cual fue

---

[5] *Id.*, Entrada Núm. 39.
[6] *Id.*, Entrada Núm. 42.
[7] *Id.*, Entrada Núm. 56.
[8] *Id.*, Entrada Núm. 104.
[9] *Id.*, Entrada Núm. 107.
[10] *Id.*, Entrada Núm. 112.
[11] *Id.*, Entrada Núm. 188.
[12] *Id.*, Entrada Núm. 189.

declarada *Sin Lugar* el mismo día. De igual forma, el 30 de octubre de 2025 el señor Rubio Cartaya presentó una *Moción de Determinaciones de Hechos Adicionales y Reconsideración* en el Caso Núm. SJ2023CV05016,[13] que fue denegada mediante *Orden* el 3 de noviembre de 2025.[14]

Aún insatisfecho, el 17 de noviembre de 2025, el señor Rubio Cartaya acudió ante esta Curia mediante los referidos recursos de *Apelación*. En esencia, el apelante le imputó al TPI la comisión de los mismos errores en ambos recursos, a saber:

1. **Erró el [Tribunal de Primera Instancia] al concluir que la ausencia de consentimiento expreso de la codemandada Nancy Carolina Devesa Méndez impidió el perfeccionamiento del contrato de compraventa del Apartamento "C".**

2. **Erró el [Tribunal de Primera Instancia] al desestimar la demanda instada por Rubio Cartaya y ordenar su lanzamiento del Apartamento "C", al concluir que no procedía el remedio de cumplimiento específico bajo el Art. 1287 del Código Civil de 2020, cuando la prueba admitida y las determinaciones de hecho establecen que el contrato de compraventa de los Apartamentos "C" y "E" se perfeccionó válidamente el 4 de noviembre de 2022, y que la negativa de la vendedora a otorgar las escrituras constituyó un incumplimiento contractual y no una ruptura de negociaciones precontractuales.**

3. **Erró el [Tribunal de Primera Instancia] al no ordenar la desestimación del Caso Civil Núm. SJ2023CV07736 por duplicidad, emitiendo dos sentencias idénticas sobre la misma controversia adjudicada a favor de las apeladas, y respecto del mismo objeto y causa de acción, ya que ambos procesos se debieron considerar como unificados según la norma de *Cuadrado v. García*, 99 DPR 154 (1970)**.

El 18 de noviembre de 2025 mediante *Resolución* consolidamos los recursos clasificados alfanuméricamente como TA2025AP00558 y TA2025AP00559. El 17 de diciembre de 2025 la parte apelada presentó su *Alegato en oposición a Apelación*.

Perfeccionado el recurso y con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[13] *Id.*, Entrada Núm. 194.
[14] *Id.*, Entrada Núm. 198.

## II.

## A. Obligaciones y Contratos

En nuestro ordenamiento jurídico las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos ilícitos y de cualquier otra acción u omisión en el cual medie culpa o negligencia. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024). Por ello, lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y terceros. 31 LPRA sec. 9754. Asimismo, las partes pueden acordar cualquier cláusula contractual, siempre que no sea contraria a la ley, a la moral o al orden público. 31 LPRA sec. 9753. Así pues, el principio de libertad de contratación reconoce la autonomía de la voluntad de los contratantes. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 33 (2010); *De Jesús González v. A.C.,* 148 DPR 255, 263 (1999).

En tal sentido, el contrato es el negocio jurídico bilateral mediante el cual dos o más partes expresan su consentimiento, conforme a las formas establecidas por la ley, con el propósito de crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751. Siendo ello así, éste se perfecciona en el momento en que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. 31 LPRA sec. 9771. Por ende, el contrato debe haberse formado libre, consciente y deliberadamente. *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48, 62 (2011) (citando a J.M. Lete del Río y J. Lete Achirica, *Derecho de Obligaciones*, Navarra, Ed. Thomson/Aranzadi, 2005, Vol. 1., págs. 430-431).

En particular, la declaración o manifestación del consentimiento podría ser en forma expresa o tácita. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 286 (2021) (citando a J.R. Vélez Torres, *Curso de derecho civil: derecho de contratos*, Puerto Rico, Ed. Rev. Jur. UIPR, 1990, T.IV, Vol. II, pág. 20). La declaración de la voluntad es expresa cuando "el declarante se comunica con el destinatario de su declaración por medio de signos idóneos para hacer llegar a éste su pensamiento". L. Diez Picazo, *Fundamentos del Derecho Civil Patrimonial*

*I: Introducción Teoría del Contrato*, Madrid, Ed. Civitas, 1996, Vol. I, págs. 148-149. Así pues, el medio normal para formular una declaración expresa de la voluntad es el lenguaje, tanto verbal como escrito. *Id.*, pág. 149.

Por otro lado, en su Artículo 267 el Código Civil de Puerto Rico dispone que la manifestación tácita de la voluntad "solo resulta eficaz por signos inequívocos y debe recaer sobre un objeto determinado y hacerse en un contexto habitual". 31 LPRA sec. 6115. En este contexto, el elemento determinante del consentimiento tácito es la conducta de la persona y no las palabras empleadas para manifestarlo. *Aponte Valentín et al. v. Pfizer Pharm.*, *supra*, pág. 286. De manera que, la declaración tácita de la voluntad contractual "está sometida siempre a una interpretación y valoración de los tribunales, que debe realizarse de forma objetiva, no buscando tanto la inducción de una voluntad oculta bajo ellos, cuanto el sentido que el comportamiento tiene y la confianza que suscita en los demás". Diez Picazo, *op. cit.*, pág. 149.

En el supuesto de las declaraciones tácitas de la voluntad, "una persona realiza un determinado acto o adopta un determinado comportamiento, que sin declarar abiertamente ni manifestar voluntad alguna, permite inducir o inferir que tal voluntad existe y la presupone necesariamente". *Id.* Como regla general, las declaraciones tácitas de la voluntad operan en las vicisitudes de una relación contractual ya creada y en marcha. *Id.* A modo de ejemplo, se mencionan las siguientes circunstancias: a) tácita reconducción; b) confirmación o ratificación tácita; y c) novación tácita. *Id.* Aunque nada impide que el mismo esquema se aplique al momento inicial del establecimiento de la relación contractual. *Id.* De manera similar, el silencio o la inacción no constituyen una manifestación de la voluntad excepto cuando se dispone algo diferente por la ley, por acuerdo de las partes o porque de las relaciones anteriores entre éstas se pretende asignar al silencio un valor de asentimiento. 31 LPRA sec. 6115.

En concordancia con lo anterior, el tratadista Carlos Lasarte señala que la oferta contractual constituye una declaración de la voluntad emitida con la intención de celebrar un contrato y que, por lo tanto, debe reunir todos los elementos necesarios para que con la mera aceptación de la otra parte el contrato

se pueda considerar como perfecto, en el sentido de *perfeccionado*. C. Lasarte, *Contratos: Principios de Derecho Civil*, Madrid, Ed. Marcial Pons, 2021, T. III, pág. 56. Asimismo, dicho autor explica que:

> La aceptación, por consiguiente, es una declaración de la voluntad por naturaleza *recepticia*; esto es, debe ser dirigida precisamente al oferente y ser plenamente concordante con la oferta (o, en su caso, contraoferta), con independencia de que pueda realizarse tanto de forma expresa cuanto tácita, o a través de hechos concluyentes que no dejen lugar a dudas sobre la admisión de las condiciones contractuales ofrecidas. [...] [E]l silencio o la falta de actuación de quien no puede ser considerado aún eventual aceptante no puede entenderse como una manifestación *positiva* de la voluntad que lo vincule contractualmente: *qui tacet non utique fatetur* (el que calla ni afirma ni niega). Lasarte, *op. cit.*, pág. 57.

### B. Culpa *in contrahendo*

Es principio básico del derecho de obligaciones que nadie está obligado a contratar. *PRFS v. Promoexport*, 187 DPR 42, 55 (2012); *Colón v. Glamorous Nails*, 167 DPR 33, 44 (2006); *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 526 (1982). Esto, "tiene como consecuencia que las partes no se encuentren obligadas a proseguir con las negociaciones hasta perfeccionar el contrato, sino que están en libertad de contraer el vínculo o retirarse, según convenga a sus mejores intereses". *Colón v. Glamorous Nails, supra; Prods. Tommy Muñiz v. COPAN, supra.*

No obstante, aun cuando no se hubiera perfeccionado un contrato, nuestro ordenamiento reconoce que "[l]as negociaciones preliminares generan una relación de carácter social que impone a las partes el deber de comportarse de acuerdo con la buena fe, que no impera solamente en las relaciones jurídicas ya establecidas o constituidas, sino también en las relaciones derivadas de un simple contrato social". *Colón v. Glamorous Nails, supra; Prods. Tommy Muñiz v. COPAN, supra*, págs. 526-527.

Cónsono con lo anterior, el Artículo 1271 del Código Civil, 31 LPRA sec. 9881, dispone que:

> Los tratos previos a la perfección del contrato deben desarrollarse conforme a la lealtad y la buena fe entre los probables contratantes. Se exige especialmente el deber de colaborar en la formación del contrato, obtener y proporcionar información de circunstancias de hecho y derechos relevantes, mantener la confidencialidad de la información recibida y conservar el bien que será objeto del contrato futuro.

Además, el Artículo 1272 del precitado cuerpo normativo establece que constituirá una violación a los deberes de conducta exigidos durante la etapa precontractual las siguientes acciones u omisiones:

(a) romper las negociaciones de forma repentina, inoportuna o arbitrariamente;
(b) no respetar los acuerdos parciales ya logrados;
(c) iniciar o continuar sin seriedad las negociaciones;
(d) incurrir en dolo o violencia;
(e) revocar una oferta vinculante o, repentinamente, una oferta no vinculante; y
(f) causar la nulidad de un contrato. 31 LPRA sec. 9882

De esta forma, se ha reconocido la culpa *in contrahendo* no solo cuando una de las partes que interviene en el proceso de formación de un contrato actúa intencionalmente, mediando dolo, fraude o abuso del Derecho, sino también cuando obra negligentemente, causando daño. *Colón v. Glamorous Nails*, *supra*, pág. 46. Ello, ya que las negociaciones que anteceden al contrato pueden ser de variada índole, y, por tanto, la responsabilidad precontractual puede surgir en diferentes supuestos. *PRFS v. Promoexport, supra; Prods. Tommy Muñiz v. COPAN*, *supra*, págs. 529-530.

En particular, debemos resaltar que la responsabilidad derivada del incumplimiento del deber de conducirse de buena fe en la etapa de negociaciones es de naturaleza extracontractual. *Colón v. Glamorous Nails, supra*, págs. 45-46 (citando a *Prods. Tommy Muñiz v. COPAN, supra*, pág. 529). Dicha responsabilidad se fundamenta en que la suspensión injustificada de las negociaciones "constituye un quebrantamiento de la buena fe que…penetra todo nuestro ordenamiento positivo… que le impone a las partes un deber de lealtad recíproca en las negociaciones". *Id.* En este marco, se configura una obligación frente a una persona determinada, que se origina en la etapa de las negociaciones en el cual el ejercicio del derecho de una de las partes a retirarse, --como manifestación de la autonomía de la voluntad--, activa la protección de la confianza depositada por la otra parte y resulta contrario al principio inmanente de la buena fe. *Id.*, pág. 55.

Nuestro más Alto Foro ha reiterado que, para evaluar si una parte incurrió en responsabilidad al romper las negociaciones, el tribunal deberá considerar

las siguientes circunstancias: (1) el desarrollo de las negociaciones, (2) cómo comenzaron, (3) el curso que siguieron, (4) la conducta de las partes durante su transcurso, (5) la etapa en que se produjo el rompimiento, y (6) las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial. *Prods. Tommy Muñiz v. COPAN*, *supra*, pág. 530; *Torres v. Gracia*, 119 DPR 698, 705 (1987);

Así, quien rompe de manera injustificada las negociaciones de un contrato que estaba a punto de ser perfeccionado debe responder por el daño causado. M.E. García Cárdenas, *El nuevo derecho de obligaciones y contratos: Código Civil 2020*, 1ra ed., San Juan, Ed. Biblio Services, 2021, Sec. 15.3, pág. 461. Ahora bien, es sabido que la indemnización por culpa *in contrahendo* tiene carácter reparativo, fundada en el principio según el cual quien vulnera la confianza depositada por otro debe devolver a esa persona al estado en que estaría de no haberse producido los hechos que dieron origen a la reparación. *Colón v. Glamorous Nails*, *supra*, pág. 57. Es decir, el "deber de indemnizar por el rompimiento culposo de los tratos preliminares alcanza, de ordinario, tan sólo al llamado 'interés negativo'; es decir, a la reparación de los gastos sufridos y las pérdidas patrimoniales derivadas del proceder arbitrario de la parte que incurre en culpa". *Colón v. Glamorous Nails*, *supra*, pág. 58.

### C. Compraventa

En lo que compete a esta controversia, entre los contratos que regulan nuestro Código Civil, se encuentra el contrato de compraventa. Este tipo de contrato es uno bilateral que crea obligaciones recíprocas. *Martínez v. Colón Franco, Concepción*, 125 DPR 15, 32 (1989). El Artículo 1274 del Código Civil lo define como el contrato mediante el cual "la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta a su vez se obliga a pagarle un precio cierto". 31 LPRA 9941; *Segarra Rivera v. Int'l. Shipping et. al.*, 208 DPR 964, 993 (2022). Toda persona con capacidad para consentir puede convenir la compraventa. 31 LPRA sec. 9951.

El contrato de compraventa no exige formalidad especial alguna para su validez, salvo cuando la ley especial así lo requiera. 31 LPRA sec. 9981. A su vez, puede ser objeto de la compraventa "cualquier bien presente o futuro, propio o ajeno, cuya posesión o transferencia no esté prohibida o restringida por ley. En la compraventa de un bien parcial o totalmente ajeno, la parte vendedora se obliga a transmitir o hacer transmitir el dominio a la parte compradora". 31 LPRA sec. 9961. A este respecto, el contrato sobre un bien futuro o ajeno será considerado aleatorio si no se garantiza la existencia del bien; en caso contrario, se considera conmutativo y condicional. 31 LPRA sec. 9791. En consecuencia, la persona que promete un bien futuro o ajeno tiene el deber de emplear su mayor diligencia a fin de que el bien llegue a existir o ingrese en su patrimonio. *Id.*

### D. Desahucio

El desahucio es el medio que tiene el dueño o la dueña de un bien inmueble arrendado para que pueda recobrar la posesión de este, a través del lanzamiento o la expulsión del arrendatario o precarista que la mantiene sin pagar los correspondientes cánones. *Markovic v. Meldon*, 2025 TSPR 99, 216 DPR ___ (2025); *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 799 (2023). Véase, además: *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020). Esta acción de desahucio puede solicitarse, ya sea mediante proceso sumario, o por vía ordinaria. *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). En cuanto al desahucio sumario, el mismo está regulado por el Código de Enjuiciamiento Civil, específicamente en sus artículos 620 a 634, 32 LPRA secs. 2821-2838.

Sobre el carácter sumario del desahucio, nuestro Tribunal Supremo ha expresado que ello responde al interés del Estado en atender rápidamente las reclamaciones por parte de los dueños de inmuebles que ven interrumpido su derecho a poseer y disfrutar de su propiedad. *SLG Ortiz-Mateo v. ELA, supra*; *Cooperativa v. Colón Lebrón, supra*, pág. 820; *Adm. Vivienda Pública v. Vega Martínez, supra*, pág. 240; *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5 (2016). Asimismo, el Tribunal Supremo ha expresado que "la necesidad de que

ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario, no puede llevarnos a configurar una regla automática". *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226, 241 (1992). Es doctrina general establecida por el Tribunal Supremo que los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser este uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 431 (2009); *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971). Bajo ese crisol doctrinario, si un demandado en desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante surge un conflicto de título que hace improcedente la acción de desahucio. *C.R.U.V. v. Román, supra,* pág. 322.

Como lo que se intenta recobrar en una acción de desahucio es la posesión, nuestro Más Alto Foro ha expresado que, en la acción sumaria de desahucio, se debe limitar la consolidación de otras acciones o defensas. *ATPR v. SLG Volmar-Mathieu, supra,* pág. 10. Cuando la demanda se fundamente en la falta de pago del canon o precio convenido en un contrato, no se admitirá otra prueba que la del recibo o cualquier otro documento que conste haberse verificado el pago. Art. 627 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2829. Sin embargo, en ocasiones, el Tribunal Supremo de Puerto Rico ha permitido la presentación de algunas defensas, siempre y cuando las mismas no desnaturalicen el espíritu del carácter sumario del proceso de desahucio. *Mora Dev. Corp. v. Sandín,* 118 DPR 733, 749 (1987). Una vez esgrimidas las defensas presentadas por el demandado, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario. *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* págs. 245-246. Es decir, más allá de sus alegaciones, el demandado debe demostrar con hechos específicos que se justifica convertir el procedimiento en uno ordinario. *Id.,* pág. 247. De esta forma el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales sólo corresponde a la acción ordinaria, ya que el único pronunciamiento en la sentencia de

desahucio sumario es si procede o no ordenar el desalojo. *Fernández & Hno. v. Pérez, supra,* 79 DPR 244, 248 (1956).

### E. Consolidación de pleitos

En lo referente a la consolidación de pleitos, la Regla 38.1 de Procedimiento Civil de Puerto Rico, dispone que "[c]uando estén pendientes ante el tribunal pleitos que comprendan cuestiones comunes de hechos o de derecho, el tribunal podrá ordenar la celebración de una sola vista o juicio de cualquiera o de todas las cuestiones litigiosas comprendidas en dichos pleitos". 32 LPRA Ap. V, R. 38.2. De manera que, el tribunal podrá ordenar la consolidación de todos los pleitos y podrá dictar, a este respecto, aquellas órdenes que eviten gastos o dilaciones innecesarias. *Id.* A tenor con lo esbozado, el profesor Hernández Colón explica que:

> [L]a finalidad de la consolidación es evitar la proliferación de acciones, lograr la economía procesal y **evitar** la indeseable probabilidad de que surjan **fallos incompatibles relacionados con un mismo incidente**.
> [...]
> La consolidación de pleitos puede ser ordenada a iniciativa del tribunal, o solicitada por una de las partes cuando existe entre los casos a ser consolidados una cuestión común de hecho o de derecho. En este caso el tribunal de instancia debe dictar sentencias distintas para cada uno de los pleitos. Al recurrir en esos casos debe recurrirse de cada una de las sentencias en recursos separados. R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. Lexisnexis, 2017, Sec. 3601, pág. 573. (Énfasis suplido).

Así pues, como regla general, la consolidación de dos pleitos no implica que las partes ni las alegaciones de uno se conviertan automáticamente en partes y alegaciones del otro. *Cuadrado v. García,* 99 DPR 154, 157 (1970); R. Hernández Colón, *op. cit.,* pág. 573. Sin embargo, "si la demanda en uno de los pleitos consolidados de hecho se refiere a la materia que debió alegarse como reconvención, la consolidación tiene el efecto de hacer uno solo de los dos pleitos convirtiéndose las parte y alegaciones de uno en partes y alegaciones del otro". *Cuadrado v. García, supra,* pág. 157. Por otro lado, se ha resuelto que no es necesario que la totalidad de las cuestiones de hecho y de derecho sean idénticas en los casos a consolidar. *Vives Vázquez v. E.L.A.,* 142 DPR 117, 127 (1996). A

su vez, aunque la que la identidad de las partes en los pleitos a consolidar es un aspecto que puede pesar sobre el ánimo del juzgador, no es un requisito. *Id.*

Más recientemente, en *Greene v. Biase*, 2025 TSPR 83, 216 DPR ___ (2025), el Tribunal Supremo de Puerto Rico reiteró que nuestro ordenamiento jurídico siempre ha buscado facilitar el acceso a los tribunales y el manejo de los procesos judiciales, asegurando que las controversias se resuelvan de manera justa, rápida y económica para todas las partes. En el precitado caso el tribunal extendió la norma trazada en *Silva Barreto v. Tejada Martell*, 199 DPR 311, 316 (2017), permitiendo que en un (1) recurso de apelación un apelante pueda acumular varias sentencias parciales de un caso, sujeto a la presentación oportuna del recurso en alzada. *Greene v. Biase, supra,* pág. 9.

### III.

En el presente caso, el señor Rubio Cartaya señala que erró el TPI al concluir que la ausencia de consentimiento expreso de la señora Devesa Méndez impidió el perfeccionamiento del contrato de compraventa del Apartamento C. A su vez, adujo que incidió el foro primario al determinar que existió una ruptura de negociaciones precontractuales en lugar de un incumplimiento de contrato, toda vez que dicho contrato se perfeccionó el 4 de noviembre de 2022. Por tal razón, alega que procede el remedio de cumplimiento específico bajo el Art. 1287 de nuestro Código Civil. Por último, afirma que erró el foro *a quo* al no ordenar la desestimación del Caso Civil Núm. SJ2023CV07736 por alegada duplicidad. No le asiste la razón. Veamos.

El primer y segundo señalamiento de error serán discutidos en conjunto por estar íntimamente relacionados. Del expediente ante nuestra consideración se desprende que, el 16 de febrero de 2019 el señor Rubio Cartaya suscribió un contrato de arrendamiento con la señora Méndez González, mediante el cual ésta le alquiló el Apartamento C por un canon de arrendamiento de $2,700.00 mensuales.[15] Posteriormente, el 4 de noviembre de 2022 la señora Méndez

---

[15] *Id.*, Entrada Núm. 134.

González y el señor Rubio Cartaya se reunieron para dialogar acerca de la compraventa de los Apartamentos E y C de manera conjunta.[16]

Asimismo, surge del expediente que en dicha reunión la señora Méndez González le ofreció al señor Rubio Cartaya la venta de los mencionados apartamentos por la suma de $2,000,000.00.[17] En igual fecha, el señor Rubio Cartaya le comunicó a la señora Méndez González que aceptaba comprar los Apartamentos E y C por la cantidad de $2,000,000.00, obligándose al pago de dicho precio.[18] Así las cosas, éstos se dieron la mano para confirmar el acuerdo, y la señora Méndez González le indicó al señor Rubio Cartaya que fuera buscando el dinero y mandara a redactar los documentos para formalizar la transacción.[19] Seguidamente, ambas partes emprendieron gestiones dirigidas a ese objetivo, entre las cuales constan distintos borradores de escrituras públicas.

De acuerdo con lo señalado anteriormente, un contrato se perfecciona desde que las partes manifiestan su consentimiento sobre el objeto y la causa, excepto en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. 31 LPRA sec. 9772. Con relación a ello, el apelante insiste en que la señora Devesa Méndez consintió a las gestiones de su madre, la señora Méndez González, de manera implícita. Éste aduce que Méndez González estaba habilitada para cumplir su obligación contractual de transmitirle o hacerle transmitir el dominio del Apartamento C, conforme a la normativa de la compraventa de un bien ajeno. Según la parte apelante, la señora Méndez González incumplió un contrato válido ya perfeccionado. No nos persuaden sus argumentos.

En primer lugar, advertimos que la señora Devesa Méndez, titular del Apartamento C, no participó del acuerdo verbal en el que se convino la venta de los Apartamentos E y C el 4 de noviembre de 2022. En otras palabras, ésta no formó parte de la oferta y aceptación formuladas por la señora Méndez González y el señor Rubio Cartaya, respectivamente. Sin embargo, en total contravención

---

[16] *Id.*, Entrada Núm. 190.
[17] *Id.*
[18] *Id.*
[19] *Id.*

a la normativa que antecede, la parte apelante sostiene que la obligación de la señora Devesa Méndez se limitaba a consentir a que el Apartamento C regresara al patrimonio de su madre.

En este sentido, la interpretación que nos corresponde realizar debe ser objetiva, sin buscar la inducción de una voluntad oculta. Diez Picazo, *op. cit.*, pág. 149. Por consiguiente, razonamos que el 4 de noviembre de 2022, fecha en la cual el apelante afirma que se habría perfeccionado el contrato de compraventa, no se manifestó ni se dio a conocer la voluntad de la señora Devesa Méndez, para vender el inmueble del cual es propietaria. 31 LPRA sec. 6115. En cambio, surge del expediente que la señora Devesa Méndez tenía interés en tasar la propiedad, acción que finalmente se llevó a cabo. En cuanto al presunto consentimiento implícito conferido por la señora Devesa Méndez, señalamos que como regla general las declaraciones tácitas de la voluntad funcionan en las vicisitudes de una relación contractual ya creada y en marcha. Diez Picazo, *op. cit.*, pág. 149. Así, concluimos que entre la señora Devesa Méndez y el señor Rubio Cartaya no existía una relación contractual previa sobre la venta del Apartamento C.

En segundo lugar, obsérvese que el **borrador** del "Contrato de Arrendamiento y Opción a Compra" de los Apartamentos E y C, establece en el párrafo número 37 que "[s]erá **condición precedente a la formalización de la compraventa** el que la ARRENDADORA deje sin efecto la Escritura 106 de 9 de noviembre de 2012 ante la notario Carmen Agudo Loubriel. Dicha transacción será a costa de la parte ARRENDADORA ante el notario de la selección del ARRENDATARIO". (Énfasis suplido).

Así las cosas, tal como acertadamente concluyó el foro primario, es evidente que la señora Devesa Méndez no prestó su consentimiento para la venta de su apartamento, ni existe constancia de que hubiera autorizado a la señora Méndez González a disponer de un bien ajeno. 31 LPRA sec. 9791. Por el contrario, el acuerdo entre la señora Méndez González y el señor Rubio Cartaya era condicional a la revocación de la donación del Apartamento C, lo que nunca ocurrió. En consecuencia, el supuesto contrato no se perfeccionó.

A continuación, corresponde analizar las gestiones precontractuales. Dentro de la prueba documental estipulada, se encuentra el contenido de múltiples mensajes de texto enviados entre el señor Rubio Cartaya y la señora Méndez González, según las fechas y horas que constan en cada mensaje, incluyendo los siguientes:[20]

**A. Parte Demandante, Eduardo Rubio Cartaya:**
[...]
**34. 21 de noviembre de 2022, Página 158, Línea 3**, Audio PTT-20221121- WA0094.opus. AUDIO SR. RUBIO: "Te veo ya mismo. Ya tengo el contrato de opción de alquiler con opción a compra. [...].

**35. 21 de noviembre de 2022, Página 158, Líneas 5-12.**
11/21/22, 5:33 PM - Eduardo Rubio: llegue subo?
11/21/22, 5:52 PM - Nancy Depas Ocean: Lo acabo de ver. Cerré. Estoy bien cansada. Mañana antes de las 10 por fa. <u>Mándalo por email para que mi hija opine</u>. Sorry
11/21/22, 5:58 PM - Nancy Depas Ocean: <u>Mi hija trabaja mañana O sea que por favor mándaselo ahora para que ella me dé su contestación</u> antes de irse al trabajo. (Subrayado suplido).
[...]

**43. 7 de diciembre de 2022, Página 199, Líneas 1-10.**
12/7/22, 8:48 AM - Nancy Depas Ocean: Este amigo mío es el que le interesa la casa también yo le dije que ya estaba <u>prácticamente vendida</u> 2.5 millones (Subrayado suplido).
12/7/22, 8:59 AM - Nancy Depas Ocean: Los 20.000 no han entrado
12/7/22, 9:30 AM - Eduardo Rubio: <u>Yo estoy ready con lo que hablamos para cerrar</u> cuanto tu me digas que estas ready. [...] (Subrayado suplido).
12/7/22, 9:31 AM - Nancy Depas Ocean: Ok. Es por sí cuando vayan a recoger la planta te comenta algo le digas que ya tú estás en <u>conversaciones serías</u> conmigo hace tiempo por 2.5 millones
12/7/22, 9:34 AM - Eduardo Rubio: ok (Subrayado suplido).

**44. 24 de diciembre de 2022, Página 227, Líneas 9-22.**
12/24/22, 7:31 AM - Eduardo Rubio: <u>ok como vamos para el cierre</u>? Te llego el poder de tu hija? (Subrayado suplido).
12/24/22, 7:46 AM - Nancy Depas Ocean: No
12/24/22, 9:15 AM - Eduardo Rubio: <u>Quedo pendiente</u>!! [...] (Subrayado suplido).
[...]

**46. 16 de febrero de 2023, Página 274, Líneas 6-7, Audio PTT-20230216-WA0105.opus.**
AUDIO SR. RUBIO: "<u>Saludos, Nancy. Mira, algo súper importante es el poder de tu hija para lo de la donación y, sabes, para poder firmar la... echar para atrás lo de la donación</u>. Ese poder es importante que me lo envíen lo más pronto posible para que el abogado lo revise y esté claro que, que eso funciona y que está todo en orden. ¿Okey? Te voy a enviar... Ya para mañana te... están los proyectos de escrituras con lo de la... revirtiendo la donación y todo lo demás". (Subrayado suplido).
[...]

**51. 17 de marzo de 2023, Página 278, Líneas 11-19.**
3/17/23, 9:15 AM - Nancy Depas Ocean: Buenos días <u>mi hija insiste en que tenemos que tasar la propiedad</u> y como <u>apartamento que tú tienes es de ella</u> la voy a complacer. La tasadora se llama mariela monje y está disponible martes jueves o viernes después de lav1 . Dame hora para que vaya y vea todo gracias
3/17/23, 9:34 AM - Eduardo Rubio: martes es buen dia en la mañana!

---

[20] *Id.*, Entrada Núm. 190.

[...]

**53. 27-31 de marzo de 2023, Página 282, Líneas 7-35.**

3/27/23, 7:04 PM - Eduardo Rubio: <u>Saludos Nancy!! Sabemos algo de la donacion</u>? El abogado de la terraza?

3/27/23, 9:08 PM - Nancy Depas Ocean: Nada

3/28/23, 2:32 PM - Eduardo Rubio: Saludos Nancy! <u>Me avisas que te dicen de la donacion</u> que siguen pasando las semanas y Ana me tiene loco. Ya tu sabes como son la mujeres cuidate hablamos. (Subrayado suplido).

3/31/23, 9:29 AM - Eduardo Rubio: Saludos Nancy!! Recibi el email pero no entiendo nada y no sale ninguna tasacion llamame cuando puedas

3/31/23, 9:34 AM - Nancy Depas Ocean: No pasa. La tasadora te las pasa. Voy a tener visita hoy no sé cuando te llame

3/31/23, 9:41 AM - Eduardo Rubio: Ok espero tu llamada mas tarde buen dia

3/31/23, 9:41 AM - Nancy Depas Ocean: Ok

3/31/23, 10:33 AM - Nancy Depas Ocean: Missed voice call

3/31/23, 10:34 AM - Eduardo Rubio: Me llamaste?

3/31/23, 10:35 AM - Nancy Depas Ocean: Te llegaron las tasaciones? Mariela las mandó a tu email. Míralas y me llamas. <u>Intenta ponerye [sic] en mi lugar</u> [...]. (Subrayado suplido).

[...]

**B. Parte demandada, Nancy Dolores Méndez González:**

[...]

5. Página 268, líneas 30-32 (1/21/23 10:23 am) 1/21/23, 10:23 AM - Nancy Depas Ocean: Es mejor que los demás arreglos los hagas <u>cuando compres realmente no hay ni un contrato firmado como preventa ni deposito</u> por el bien de los dos.[21] (Subrayado suplido).

De igual manera, quedó demostrado que el señor Aponte Mellado, abogado-notario contratado por la parte apelante, elaboró diversos documentos, entre ellos el borrador de escritura para la revocación de donación del Apartamento C y el borrador del contrato de arrendamiento y opción a compra de los Apartamentos E y C. Asimismo, se acreditó que el 14 de marzo de 2023 la señora Ortiz Migenes, abogado-notario contratada por la parte apelada, autorizó la Escritura Núm. 14 de Protocolización de Poder Especial Limitado a través de la cual protocolizó el Poder Especial Limitado otorgado por la señora Devesa Méndez, el 17 de noviembre de 2022. Cabe señalar además que el 23 de marzo de 2023 la señora Méndez González confirió un Poder Especial Limitado con el propósito de autorizar a la señora Alomar Camacho a representarla en la revocación de donación del Apartamento C y la compraventa de dicho apartamento.

---

[21] *Id.*

Analizado el expediente y en atención a las circunstancias precisadas en *Prods. Tommy Muñiz v. COPAN, supra,* pág. 530, se desprende que las negociaciones relativas a la compraventa de los Apartamentos E y C estaban avanzadas. Empero, las mismas se rompieron cuando el 31 de marzo de 2023 la señora Méndez González luego de recibir la tasación de la propiedad contactó al señor Rubio Cartaya mediante un mensaje de texto solicitándole que se pusiera en su lugar.[22] En respuesta, la parte apelante le recalcó a la señora Méndez González que no entendía el asunto de la tasación y sostuvo que, a su juicio, ambos tenían un acuerdo desde hacía años, para el cual se había venido preparando durante meses.[23] En consecuencia, la conducta de la señora Méndez González vulneró la buena fe y el deber de lealtad recíproca en las negociaciones lo cual constituyó una ruptura de negociaciones precontractuales. *Colón v. Glamorous Nails, supra,* págs. 45-46.

Por consiguiente, en cuanto al desahucio concedido en contra del señor Rubio Cartaya reiteramos el 16 de febrero de 2019 el señor Rubio Cartaya suscribió un contrato de arrendamiento del Apartamento C por el plazo de un (1) año. Posteriormente, el 12 de mayo de 2023 la señora Devesa Méndez, dueña del aludido bien inmueble, por conducto de la señora Méndez González le solicitó al señor Rubio Cartaya que en el término de un (1) mes contado desde dicha fecha, debía desalojar la propiedad. Entonces, dado que el contrato de arrendamiento ha vencido y no existe interés de la señora Devesa Méndez para su extensión, corresponde el lanzamiento del precarista del bien inmueble en cuestión. 31 LPRA sec. 2821; *Markovic v. Meldon, supra.*

En la alternativa, más que reconocerle al apelante la facultad de exigir el cumplimiento de un contrato que afirma estar perfeccionado, cabe sostener que dicho contrato podría adolecer de causa lícita. Ello, dado que el Artículo 1320 de nuestro Código Civil delimita de forma precisa los supuestos en los que procede la revocación de una donación. 31 LPRA sec. 10064. Por tanto, el primer y segundo señalamiento de error no fueron cometidos.

---

[22] *Id.*
[23] *Id.*

En el tercer señalamiento de error, el señor Rubio Cartaya sostiene que incidió el foro recurrido al no ordenar la desestimación del Caso Civil Núm. SJ2023CV07736 sobre desahucio, pues se dictaron dos Sentencias idénticas sobre la misma controversia y que ambos procesos debieron considerarse como unificados. Veamos.

El 25 de agosto de 2023 el TPI emitió una *Resolución y Orden de Consolidación.*[24] Mediante el aludido dictamen el foro primario ordenó la consolidación del caso SJ2023CV07736 con el caso SJ2023CV05016 y ordenó que el caso SJ2023CV07736 continúe consolidado bajo el trámite ordinario con el SJ2023CV05016.[25] De este modo, el juicio en su fondo se tramitó con los casos consolidados. Posteriormente, el 17 de octubre de 2025 el TPI desconsolidó los casos y dictó sentencias separadas para cada uno de ellos.

Es sabido que la Regla 38.1 de Procedimiento Civil establece las disposiciones aplicables a la consolidación de pleitos. 32 LPRA Ap. V, R. 38.2. En este sentido, la consolidación tiene como finalidad prevenir la multiplicación de acciones, garantizar la economía procesal y evitar la posibilidad de dictar fallos incompatibles relacionados con un mismo incidente. R. Hernández Colón, *op. cit.*, pág. 573. De ahí que, el apelante sostiene que la economía procesal aconsejaba que solo existiera una sentencia dictada en el Caso Núm. SJ2023CV05016, para evitar una confusión procesal de que se desestime una apelación y duplicidad. Por ende, solicita que se anule la sentencia dictada en el Caso Núm. SJ2023CV07736.

Ahora bien, la confusión señalada por el apelante no se observa en el presente caso, dado que el 18 de noviembre de 2025 este tribunal consolidó los recursos clasificados alfanuméricamente como TA2025AP00558 y TA2025AP00559. Del mismo modo, el TPI actuó correctamente en su proceder, toda vez que previno la multiplicación de acciones y la posible emisión de fallos incompatibles. Por tanto, el tercer planteamiento de error tampoco se cometió.

---

[24] *Id.*, Entrada Núm. 42.
[25] *Id.*

**IV.**

Por los fundamentos antes expuestos, se Confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones